FOURNET, Justice.
 

 The plaintiff, Dendinger, Inc., instituted injunction proceedings against the Harris Lumber & Towing Corporation, seeking to enjoin and restrain it, its agents and employees, from removing and converting to its own use logs allegedly owned by the plaintiff and resting in the bed and shallows of the 'Tchefuncta river and its tributaries, and prosecutes this appeal from the judgment of the lower court refusing the relief sought and recalling the temporary restraining order granted it.
 

 It appears that separate and extensive logging, lumber, and sawmill operations were begun along the Tchefuncta river in St. Tammany parish by Theodore Dendinger, Sr., and William T. Jay in 1880, the latter, by deed dated January 25, 1906, selling his interests to the Houlton Brothers, who had begun similar operations in the vicinity about 1890, William T. Houlton individually, on February 1, 1906, acquiring all of the Houlton Brothers’ interests, including those acquired from Jay, and continuing his operations until 1924. Theodore Dendinger, Sr., continued his operations until December of 1920, when he transferred his interests to the plaintiff. It also terminated its operations in the vicinity in 1924. In addition to Jay, Dendinger, and the Houltons, there were numerous smaller operators conducting logging and sawmill businesses in that same vicinity over this same period of time.
 

 On August 29, 1941, the defendant, through its Mr. C. W. Harris, applied to and was granted by the War Department a waiver of objection to the removal of sunken logs from the Tchefuncta and Bogue Falaya rivers, resulting from the above operations, and, on September 12, 1941, obtained, from the Department of Public Works of the State of Louisiana, a permit to salvage sunken timber from the bed of these rivers. Having, in the meanwhile, secured assignments of their interests in these logs from the numerous small operators, the defendant immediately began to operate a small sawmill on the banks of the Tchefuncta, lumbering the logs retrieved from the waters of these rivers and paying so much a thousand feet to the individuals salvaging them and delivering them at its sawmill. On February 27, 1942, the plaintiff, who after having.
 
 *511
 
 on September 25, 1941 obtained from William L. Houlton, then a resident of Hollywood, Florida, all of his “right, title and interest in and to any and all logs contained in the bed, banks of shallows of the Tchefuncta River and in the- lago.ons, bayous and streams tributary thereto, whether sunken or not,” instituted this suit.
 

 The trial judge, in his written reasons for judgment, concluded that the plaintiff had not proved its ownership of the logs purchased and sawed into lumber by the defendant within the degree of certainty required by law. He was of the opinion that these logs had been abandoned by Jay and the Houltons, as well as by the plaintiff. He was also of the opinion that Jay, in his deed conveying to the Houlton Brothers his real estate and timber interests in the vicinity in 1906, did not .specifically, nor by intention, convey to them any interest whatever in logs that had been sunk in the Tchefuncta river as a result of his operations'. He was further of the opinion that it is not only contrary to the public policy of this state, but also in violation of our statutory law, that anyone be permitted to use the state’s navigable streams as a storage place for logs, a constant and continuing menace to navigation.
 

 Our appreciation of the evidence in the record is that it amply supports the ■conclusions of the trial judge. A mere reading of the instrument whereby the Houltons acquired the Jay interests will show that none of the sunken logs then belonging to Jay were specifically conveyed to them, and, inasmuch as no special effort was ever made to salvage these sunken logs — other than the picking up during regular operations of such logs as had become visible or hindered or interfered with operations — it is our conclusion that it was not the intention of Jay to convey to the Houltons or the Houltons to acquire title to these sunken logs. We are fortified in this view by the fact that at that time timber was plentiful and cheap, so cheap, in fact, that it was much more practicable to log new timber than it was to attempt to salvage those logs sunken in the beds of the river and its tributaries. Besides, the evidence discloses that the plaintiff itself has, from time to time, purchased logs sunken in these waters from the individuals retrieving or salvaging them.
 

 In the final analysis, the plaintiff has failed to prove that it does in fact own any of the logs purchased by the defendant from the persons now salvaging them. The plaintiff did introduce testimony to the effect that all of its logs, as contra-distinguished from other logs in the river, bore its mark of a painted white cross on their ends. However, the only evidence introduced to prove that the logs being cut by defendant are so marked appears in the testimony of Theodore Dendinger and George A. Mire, both of whom went to the defendant’s mill on a Sunday and there saw what they claimed to be a mark on the edge of a few scattered pieces of milled
 
 Umber,
 
 which they concluded was paint because it failed to yield to the scrape of a knife, and, consequently once formed a part of a log owned by the plaintiff.
 

 
 *513
 
 For the reasons assigned, the judgment appealed from is affirmed, at appellant’s cost.